# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANIEL R. HEDGES                    :
        Plaintiff,                    :
                            :
        v.                    :    Civ. No. 3:09CV1468 (PCD)
                            :
TOWN OF MADISON,
MADISON POLICE DEPARTMENT,
MADISON BOARD OF POLICE
COMMISSIONERS, EMILE GEISENHEIMER,
GARRY GYENIZS, EDWARD KRITZMAN,
LAWRENCE MOON, DAVID SMITH,
ALLEN GERARD AND TRENT FOX,
                            :
        Defendants.                    :

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Daniel R. Hedges brings this fifteen count complaint against Defendants Town of Madison et al., alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §§ 12101-17; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320 *et seq.*; the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60(a)(1), 46a-60(a)(4), 46a-60(a)(5); and the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-275 *et seq.*  Plaintiff also alleges violations of his due process rights, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, defamation and civil conspiracy.  Defendants move pursuant to FED. R. CIV. P. 12(b)(6) to dismiss all counts of the complaint [Doc. No. 11].  For the reasons stated herein, this motion is **granted.**

## I.    BACKGROUND

The following facts are recited according to the complaint.  See Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009).  Plaintiff Daniel R. Hedges is a resident of the State of Connecticut.

(Compl. ¶ 4.)  He is a 47 year old male and a career public safety officer. (Id. ¶ 5.)  Defendant

Town of Madison is a municipal corporation in the State of Connecticut.  Defendant Madison

Police Department ("the Department") is the police department of the Town as established under

the statutory authority of the State.  Defendant the Madison Board of Police Commissioners ("the

Board") is an administrative agency charged with authority over the Department.  It consists of

five individuals.  Defendant Emile Geisenheimer, sued in his individual capacity, is a member of

the Board.  Defendant Garry Gyenizs, sued in his individual capacity, is a member of the Board.

Defendant Edward Kritzman, sued in his individual capacity, is a member of the Board.

Defendant Lawrence Moon, sued in his individual capacity, is a member of the Board.

Defendant David Smith, sued in his individual capacity, is a member of the Board.  Defendant

Allen Gerard, sued in his individual capacity, is a member of the Department.  Defendant Trent

Fox, sued in his individual capacity, is member of the Department. (Id. ¶¶ 5-15.)

   In 1991, Plaintiff sought employment as a police officer with the Department.  The

Board, which is responsible for the hiring and discipline of officers, reviewed Plaintiff's

application and appointed him a Madison police officer.  Plaintiff worked as a patrol officer for

the next seventeen years.  He was also responsible, in part, for the Department armory and served

as a firearms safety instructor.  He received several commendations for outstanding service. (Id.

¶¶ 21-30.)

   During his employment, Plaintiff suffered from a variety of medical conditions, including

lyme disease, dry eye syndrome, tendinitis, arthritis, high blood pressure and low testosterone

levels as well as pain in his neck, back, shoulder and elbow.  The Department was aware of

Plaintiff's medical issues.  Plaintiff states that these medical conditions caused stress and anxiety for which he continues to seek treatment. (Id. ¶¶ 32-35.)  During his employ, Plaintiff was a member of the International Brotherhood of Police Officers and the terms and conditions of his employment were covered by a contract established through the collective bargaining process.  Upon the attainment of twenty years of service, Plaintiff would have been eligible for retirement benefits. (Id. ¶¶ 36, 40.)

On April 26, 2007, Plaintiff was involved in an automobile accident while on patrol duty.  Plaintiff was transported by ambulance to Middlesex Hospital and suffered injuries to his neck, back, shoulder and elbow for which he continues to receive medical treatment.  Plaintiff filed a worker's compensation claim, which the Town contested, arguing that he had a pre-existing injury.  The worker's compensation claim is currently pending.  Also on April 26, 2007, the Department began an Internal Affairs Investigation ("IA") concerning Plaintiff's automobile accident.  On May 16, 2007, Chief of Police Paul Jakubson placed Plaintiff on unpaid administrative leave. (Id. ¶¶ 41-49.)

Plaintiff alleges that the IA stemming from his accident breached protocol.  In 2007, the Board gave the Town Attorney, William Clendenen, control over and responsibility for IAs.  The Chief of Police had previously held this authority.  Plaintiff claims, without explanation, that this change in procedure "bastardized [sic] the IA process" and eroded the relationship between the investigation and the Board as final decision maker.  Plaintiff also claims that the investigation which led to his termination was "flawed, biased, prejudiced" and based upon untruths. (Id. ¶¶ 50-55.)

Lieutenant Gerard was assigned oversight of the IA.  Sergeants Fox and Daniels were

assigned as the chief investigators.  The complaint alleges myriad violations of police protocol by officers Gerard, Stimpson, Dobbin and Fox.  Most are unrelated to the investigation. (Id. ¶¶ 74-97.)  Plaintiff further alleges that the investigation and the decision to terminate him were "not credible for reasons [sic] the individuals comprising the links in the investigation and prosecution of the Plaintiff were all tainted by their acts of broken trust and dishonest motivations." (Id. ¶ 98.)  Although the complaint is rife with such statements, factual details and allegations of specific wrongdoing are not provided.

On January 25, 2008, the Board advised Plaintiff that he was charged with seventeen counts of offenses and violations of Department rules and regulations including untruthfulness, disrespect to other officers, incivility, conduct unbecoming a police officer and absence without authority.  He was told that the Board would be considering his termination. (Id. ¶¶ 110-112.) According the complaint, Plaintiff was not interviewed during the investigation against him.  (Id. ¶ 113.)  On April 28, 2008, the Board held a hearing on the charges.  To enter the hearing, Plaintiff and his family members were required to walk through a metal detector.  Only Plaintiff and his family were submitted to this security measure. (Id. ¶ 115.)

At the hearing, Clendenen presented the case against Plaintiff and then accompanied the Board in its executive session.  After this session, Clendenen introduced additional charges against Plaintiff.  Plaintiff's counsel objected to the additional charges but was overruled.  On May 29, 2008, the Board terminated Plaintiff's employment.  Plaintiff argues that the grounds were "meritless." (Id. ¶¶ 116-121.)    On October 6, 2008, the State of Connecticut Department of Labor began hearings in the grievance process initiated by Plaintiff's bargaining unit.  On behalf of Plaintiff, the union argued that Plaintiff's termination violated his contract. (Id. ¶ 122.)

-4-

On April 17, 2009, the internal affairs unit of the Connecticut State Police issued a report on the Madison Police Department concluding that the Department failed to implement all best practices, especially in the areas of supervision, communication and discipline.  Plaintiff argues that this report corroborates his accusations of a "poisonous atmosphere within the department" and an "overzealous Board." (Id. ¶¶ 127-128.)

On November 25, 2008, Plaintiff filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").  The CHRO released jurisdiction on July 14, 2009 and the EEOC released jurisdiction on August 7, 2009. (Id. ¶¶ 129-133.)

## II.    STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof."  Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  In ruling on a motion under FED. R. CIV. P. 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under FED. R. CIV. P. 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

has acted unlawfully." <u>Ashcroft</u>, 129 S. Ct. at 1949.

For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true.  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>  Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." <u>Bell Atlantic</u>, 550 U.S. at 555.

## III.  DISCUSSION

### A.  Discrimination

#### 1. Age Discrimination in Employment Act

Plaintiff asserts that Defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  "A plaintiff asserting an employment discrimination claim must meet an initial burden of presenting evidence sufficient to establish a *prima facie* case of the alleged violation . . . .  A *prima facie* case of discharge resulting from age discrimination is established if the plaintiff shows, through direct or circumstantial evidence, that: (1) [s]he was within the protected age group, (2) [s]he was qualified for the position, (3) [s]he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of discrimination." <u>Burger v. New York Institute of Technology</u>, 94 F.3d 830, 833 (2d Cir. 1996) (citing <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 203 (2d Cir.1995))  Plaintiff states that he was 47 years old and therefore within the protected age group.  However, in the entire 48 page complaint, Plaintiff's only allegation even remotely concerning age related discrimination is this single sentence: "their decision to terminate him from employment [sic] were made for reasons [sic] he was drawing

close to the age of retirement under the terms and conditions of the collective bargaining agreement, and would soon be eligible for the full pension benefits as defined herein." (Compl. ¶ 138.)  This threadbare recital of a conclusion, unsupported by a single factual allegation, is simply insufficient to raise the inference of discrimination necessary for a *prima facie* case. Count I is therefore dismissed.

### 2.  Title VII and the Connecticut Fair Employment Practices Act

Title VII of the Civil Rights Act makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).  Similarly, under the Connecticut Fair Employment Practices Act ("CFEPA"), it is unlawful "for an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness."  Conn. Gen. Stat. §46a-60(a)(1).

Plaintiff's claims for both discrimination and retaliation under these statutes fail because he does not allege that he is a member of any class protected under either statute.  Plaintiff alleges that he was discriminated against because of his family responsibilities.  In his response to the motion to dismiss, Plaintiff argues that his protected class is "gender plus" or "male plus family responsibilities in a family with health issues".  The Second Circuit held that "sex plus" or

-7-

"gender plus" discrimination, which involves a policy or practice by which an employer classifies employees on the basis of sex plus another characteristic, is actionable.  However, "the term 'sex plus' or 'gender plus' is simply a heuristic.  It is, in other words, a judicial convenience developed in the context of Title VII to affirm that plaintiffs can, under certain circumstances, survive summary judgment even when not all members of a disfavored class are discriminated against." Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 119-120 (2d Cir. 2004).[1]  Therefore, Plaintiff must still allege discrimination or classification at least in part on the basis of gender.  He fails to do so.  He does not allege that Defendants took his gender into account when making decisions, nor does he allege a policy or practice that discriminates against the sub-class of "men with family responsibilities".  To be actionable as sex discrimination, a decision must have been made at least in part because of a plaintiff's gender.  Here, Plaintiff does not allege that his gender influenced Defendants' decisions nor that he was treated differently from his female colleagues.  Counts II, VI, VII and VIII are therefore dismissed.

### 3. Americans With Disabilities Act

Plaintiff alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability." Reeves v. Johnson Controls World Services, Inc., 140 F.3d 144, 149 (2d Cir. 1998) (citing Ryan v. Grae & Rybicki,

---

[1] Plaintiff also cites Phillips v. Martin Marietta Corp., 400 U.S. 542 (1971) and Price Waterhouse    v. Hopkins, 490 U.S. 228 (1989) as defining "gender plus" discrimination.  Neither case establishes such a category.

-8-

P.C., 135 F.3d 867, 869-70 (2d Cir. 1998)).  Although Plaintiff alleges that he suffered several

job related injuries as well as stress and anxiety, he fails to allege that these impairments were

disabilities within the meaning of the ADA.  The ADA defines "disability" as an impairment that

 "substantially limit[s] one or more major life activities." 42 U.S.C. § 12102(1)(A).  Although

Plaintiff's opposition to the motion to dismiss discusses this legal definition at length, he asserts

no facts tending to show that his medical conditions limited his life activities.  The medical

conditions listed in the complaint seem unlikely to have a substantial impact on his major life

activities and Plaintiff has not alleged a physical handicap or impairment.  In fact, Plaintiff's only

discussion of his ability level is his claim: "by all indication, Plaintiff was capable of performing

the essential functions of his position." (Pl.'s Opp. to Mot. Dismiss at 25.)  Therefore, Count III

is dismissed.

### 4.  Rehabilitation Act

Plaintiff also alleges discrimination under Section 504 of the Rehabilitation Act, which

states: "no otherwise qualified individual with a disability in the United States, as defined in

section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving federal financial assistance." 29 U.S.C. § 794.  However, as just discussed,

Plaintiff fails to allege that he has a disability or that his health issues amount to a "substantial

impediment." 29 U.S.C. § 705(20).  Therefore, Count IV is dismissed.

### C. Health Insurance Portability and Accountability Act

Plaintiff alleges that Defendant Gerard violated the Health Insurance Portability and

Accountability Act ("HIPAA"), 42 U.S.C. § 1320 *et seq.,* by discussing Plaintiff's health with

persons not involved in the internal investigation. (Compl. ¶ 136.)  However, there is no private

right of action under HIPAA. <u>Rzayeva v. U.S.</u>, 492 F. Supp. 2d 60, 78-80 (D. Conn. 2007).

Therefore, Count V is dismissed.

### D. Connecticut Workers' Compensation Act

The Connecticut Workers' Compensation Act provides: "no employer who is subject to

the provisions of this chapter shall discharge, or cause to be discharged, or in any manner

discriminate against any employee because the employee has filed a claim for workers'

compensation benefits or otherwise exercised the rights afforded to him pursuant to the

provisions of this chapter." Conn. Gen. Stat.§ 31-290(a).  Plaintiff alleges that he filed a claim

for compensation of a work-related injury and that "as a further and direct and proximate result

of Defendants' actions and omissions, the Plaintiff suffered termination from employment to his

financial detriment." (Compl. ¶ 139.)  Plaintiff completely fails to elaborate on his claim of

discrimination, stating only that: "it is not the opposition that plaintiff claims as the act of

discrimination, but his termination by the Defendants subsequent to the filing of his claim." (Pl.'s

Opp. to Mot. Dismiss at 31.)

Plaintiff fails to make any factual allegations to support this contention.  As noted above,

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to survive a motion to dismiss. <u>Ashcroft</u>, 129 S. Ct. at 1949.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of his

entitlement to relief beyond mere "labels and conclusions." <u>Bell Atlantic</u>, 550 U.S. at 555.

Plaintiff has completely failed to assert the grounds for this claim beyond the bare statement of

his own conclusion.  Count IX is therefore dismissed.

### E.  State Common Law Claims

-10-

Plaintiff alleges intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, defamation and civil conspiracy pursuant to Connecticut common law.  These claims stem from his termination and the process surrounding his termination.

Plaintiff's employment relationship was governed by a collective bargaining agreement between the Town of Madison and the International Brotherhood of Police Officers.  (Pl.'s Opp. to Mot. Dismiss at 41.)  The agreement provides a three step procedure for filing a grievance relating to discharge, suspension or disciplinary action.  Plaintiff followed the first two steps, first submitting the grievance in writing to the chief and then submitting the grievance in writing to the Board of Police Commissioners.  Through union representation, Plaintiff then began step three, submitting the grievance to the Connecticut State Board of Mediation and Arbitration ("State Board").  However, on December 1, 2009, Plaintiff withdrew his grievance from arbitration. (Defs.' Mem. in Reply, Ex. A.)

Plaintiff argues that despite this withdrawal, he exhausted the administrative procedures available to him.  He argues that the final step in the procedure is not mandatory.  Plaintiff misunderstands the nature of exhaustion of administrative remedies.  He is correct that it is not mandatory to file a grievance with the State Board in the sense that an allegedly wronged party is never forced to take administrative or legal action.  However, exhaustion of administrative remedies is defined by the pursuit of all available administrative avenues of redress before filing a complaint in court.  Therefore, a plaintiff has not exhausted his administrative remedies if he has chosen not to take advantage of an available administrative process, even if the process is not mandatory.  In this case, Plaintiff was required to complete the third step of the grievance procedure in order to exhaust his administrative remedies.

-11-

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement . . . .  Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction . . . .  The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes." City of Hartford v. Hartford Municipal Employees Ass'n., 788 A.2d 60, 79-80 (Conn. 2002) (citations omitted).  Before resort to the courts is allowed, a union employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement.  Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. Id.; see also Hunt v. Prior 673 A.2d 514 (Conn. 1996).

Although Conn. Gen. Stat. § 31-51bb[2] "authorizes an employee who has failed to exhaust the grievance procedures in a collective bargaining agreement to pursue a cause of action in the Superior Court if the cause of action arises under the state or federal constitution or under a state statute," it does not apply to causes of action arising under common law. Hunt, 673 A.2d at 520, n.22.  The well established requirement that a union employee exhaust all possible grievance procedures applies to common law causes of action.  Therefore, Counts X, XI, XII, XIII and XV are dismissed.

**F.  Procedural Due Process**

---

[2]Conn. Gen. Stat. § 31-51bb states: "no employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

Plaintiff's withdrawal of his case from arbitration before the State Board is also fatal to his procedural due process claim.  As just discussed, although a union member is not required to pursue remedies for perceived wrongs, if a plaintiff does not pursue all available administrative means of redress, he cannot claim to have fulfilled the exhaustion requirement.  Although 42 U.S.C. § 1983 does not usually require exhaustion, a "plaintiff cannot claim a lack of due process when he chooses not to exhaust the process available to him. . . . If a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." Carroll v. Ragaglia, 292 F. Supp. 2d 324, 341-42 (D. Conn. 2003) (citing Vialez v. New York City Hous. Auth., 783 F. Supp. 109, 113 (S.D.N.Y. 1991); Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir. 1988); Tall v. Town of Cortlandt, 709 F. Supp. 401, 408 (S.D.N.Y.1989)).

Because Plaintiff failed to avail himself of all grievance procedures, "he cannot complain that his termination was in violation of due process. Although a plaintiff is generally not required to exhaust administrative remedies before bringing a § 1983 suit, this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate." Dotson v. Griesa, 398 F.3d 156, 161 n.2 (2d Cir. 2005).[3] Therefore, Count XIV is dismissed.

### IV. CONCLUSION

---

[3]      See also Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir.1988) (affirming dismissal of procedural due process claim because tenured teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement); Aronson v. Hall, 707 F.2d 693, 694 (2d Cir.1983) (affirming dismissal of procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process").

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 11] is **granted.**  The Clerk shall close the case.

    SO ORDERED.

Dated at New Haven, Connecticut, this  24th  day of March, 2010.

/s/
_____
Peter C. Dorsey
U.S. District Judge
